H. H. GROVES ET AL. v. J. WHITE WARE ET AL.

(Filed 30 November, 1921.)

1. **Guardian and Ward—Clerks of Court—Summons—Personal Service on Ward—Valid Process—Statutes.**

    Where a guardian *ad litem* has been duly appointed to represent a party to an action under disability, the court will protect his interest, and though our statute specifies that a summons must be served on such person, no practical harm would result therefrom to the ward where a guardian *ad litem* has been appointed, and he accepts the service of the summons and presumably performs his statutory duties; and the proceedings will not be declared void as to the ward when such has been done. C. S., 451.

2. **Guardian and Ward—Disability—Insane Persons—Clerks of Court—Appointment—Certificates—Public Institutions—Statutes—Evidence.**

    The certificates of the superintendents of hospitals for the insane, which are to be received as sufficient evidence for the clerk of the Superior Court to appoint a guardian for an insane person, etc., when duly sworn to and subscribed before the clerk of the Superior Court, notary public, etc., C. S., 2286, relates to the superintendents of such hospitals under governmental control, and do not include within the meaning of the statute superintendents of private institutions of this character, and the appointment by the clerk of guardians *ad litem* on their certificates is void.

3. **Constitutional Law—Statutes—Trial by Jury—Insane Persons—Disability—Statutes—Guardian and Ward—Inquisition of Lunacy.**

    The constitutional provision preserving the right to a trial by jury, Article I, section 19, applies only to cases in which the prerogative existed

at common law or by statute at the time the Constitution was adopted, and C. S., 2287, requiring that only six freeholders shall be summoned to inquire into the sanity of the person alleged to be insane, is constitutional, not requiring a jury of twelve.

**4. Insane Persons—Disability—Statutes—Inquisition of Lunacy—Partition—Ratification—Deeds and Conveyances—Statutes.**

Where the clerk of the court has unlawfully appointed a guardian *ad litem*, upon insufficient evidence, in proceedings to partition land, and thereafter the ward has been adjudged sane under the proceedings of C. S., 2287, the ward may ratify the division of land allotted in the proceedings by receiving the benefits thereof, and executing interchangeable deeds with the other parties.

APPEAL from a judgment of *Shaw, J.*, rendered at chambers in the city of Charlotte on 7 November, 1921, overruling the defendant's demurrer to the complaint, from GASTON.

The following is a concise statement of the plaintiffs' allegations: L. F. Groves died leaving a last will and testament, in which he named as devisees his widow, Sarah E. Groves, and his sons, H. H. Groves, L. C. Groves, E. E. Groves, and Forest M. Groves. H. H. Groves and L. C. Groves duly qualified as administrators with the will annexed of the estate of said L. F. Groves, and thereafter entered upon the discharge of their duties as such administrators. Forest M. Groves had been, and at that time was, confined in the Westbrook Sanatorium in or near the city of Richmond, in the State of Virginia, which is a private sanatorium for the treatment of insane persons and others suffering from nervous and mental disorder. After said administrators had qualified, Dr. James K. Hall, who was in charge of said sanatorium, certified that Forest M. Groves was of insane mind and memory, not capable of managing his financial affairs, and that the said Groves was confined in said sanatorium. Thereafter, application was made to the clerk of the Superior Court of Gaston for the appointment of a guardian for Forest M. Groves, on the ground that said Groves was insane, and the clerk, after notice to said Groves, issued letters of guardianship to E. E. Groves, who took the required oath and qualified as the guardian of said Forest M. Groves. After said E. E. Groves had been appointed guardian, a special proceeding was instituted before the clerk by Sarah E. Groves, widow, against H. H. Groves, L. C. Groves, E. E. Groves, and E. E. Groves as guardian of Forest M. Groves, for the allotment of the widow's dower in the real estate of her deceased husband, and upon report of the jury allotting dower, said report was confirmed by said clerk. Subsequent thereto an *ex parte* proceeding was instituted by H. H. Groves, L. C. Groves, E. E. Groves, and Forest M. Groves by his guardian, for the partition of the real estate claimed by said devisees as tenants in common, and upon the report of commissioners appointed

for the purpose of making such partition, a decree was entered by said clerk confirming the report of said commissioners, and the land was accordingly partitioned among said tenants. After this partition was made, H. H. Groves and his wife conveyed the land, or a part of the land allotted to H. H. Groves, to the defendants, J. White Ware, J. E. Simpson, and J. A. Estridge, at the purchase price of $26,000, which was secured by a deed of trust. J. E. Simpson paid as a part of the purchase price $8,666.67, and the defendants Ware and Estridge refused to complete their payments on the ground that said land had not been legally partitioned, in that E. E. Groves had not been legally appointed guardian for said Forest M. Groves, and that Forest M. Groves had not been personally served with summons. A petition was filed by E. E. Groves for the purpose of having said Forest M. Groves declared sane, and afterward a jury was summoned to inquire into the sanity of said Forest M. Groves, who, after investigation, made report that Forest M. Groves was no longer insane, but was of sound mind and memory, and capable of managing his own affairs. Thereafter, on 8 April, 1921, the clerk of the Superior Court made an order confirming the report of said jury. After this order of the clerk had been made Forest M. Groves tendered to Sarah E. Groves a quitclaim deed for all his right, title, and interest in and to the land allotted her as dower, reserving his rights as remainderman in the same, and tendered also a quitclaim deed to the defendants Ware, Simpson, and Estridge for the lands conveyed to them by H. H. Groves and wife, and, in addition, a quitclaim deed to L. C. Groves and E. E. Groves for the land allotted to them. The widow and the tenants in common have tendered quitclaim deeds to each other, mutually releasing to each other the interest which each tenant had in the land allotted to the other tenants. H. H. Groves endorsed to the Groves Mill Company, Inc., of Gastonia, the note executed as evidence of the purchase price of the land sold by him to the defendants Ware, Estridge, and Simpson.

The defendants filed a formal demurrer to the complaint, which is as follows: "The defendants demur to the complaint herein on the grounds that the same does not state a cause of action, particularly in that the said Forest M. Groves was not legally served with summons nor legally brought into court, and that the proceedings for his restoration to a normal and mental condition are not legal, and that the said H. H. Groves and wife cannot deliver to the defendants Ware, Estridge, and Simpson a good, legal, and indefeasible title to the lands which were conveyed by the said H. H. Groves and wife to the said Ware, Estridge, and Simpson, and that the said H. H. Groves has no legal right to collect the purchase money therefor."

Judge Thomas J. Shaw heard the argument at chambers in the city of Charlotte on 7 November, 1921, and rendered judgment overruling the demurrer. The defendants excepted, and appealed to the Supreme Court.

*Mangum & Denny for plaintiff.*
*J. W. Timberlake for the defendants Ware, Estridge, and Simpson.*
*Clarence N. Austin for Forest M. Groves.*

ADAMS, J. The legal propositions upon which the demurrer is based are these: (1) Forest M. Groves was not personally served with summons; (2) the pretended appointment of his guardian is void; (3) C. S., 2287, is unconstitutional. We shall consider the proposition *seriatim.*

C. S., 451, provides that if any defendant in an action or special proceeding is *non compos mentis* he must defend by his general or testamentary guardian, and if he shall have no general or testamentary guardian, and shall have been served with summons, the court may appoint a guardian *ad litem* to defend in his behalf. The requirement of the statute as to the service of a summons on a person who is *non compos mentis* should be strictly observed, but the question here presented concerns the legal effect of a failure to make such service. The guardian *ad litem* accepted service, and presumably performed his statutory duties. In *Matthews v. Joyce,* 85 N. C., 258, *Smith, C. J.,* said: "While, according to recent decisions, jurisdiction over the person of infants is acquired only as in the other cases by the service of process on them, and then it is competent to appoint, in case there is no general guardian, a guardian *ad litem* to act in their behalf and to protect their interests so as to bind them by judicial action, a different practice has long and almost universally prevailed in this State, and this power of appointment has been generally exercised without the issue of process, for the reason that no practical benefit would result to the infant from such service on him, and the court always assumed to protect the interests of such party, and to this end committed him to the defense of this special guardian." Practically to the same effect is the language of *Hoke, J.,* in *Rawls v. Henries,* 172 N. C., 218: "The facts in evidence strongly tend to show that the proceedings were in all respects regular and that defendant's title has never been open to question; but were it otherwise, and by reason of the fact that summons was not personally served on the minor, our authorities are very uniformly to the effect that the interest of the minor having been presented, and an answer having been filed by his general guardian or guardian *ad litem,* the failure to serve on the minor personally was only an irregularity, to be corrected, if at all, by motion in the cause. *Harris v. Bennett,* 160

N. C., 339; *Glisson v. Glisson,* 153 N. C., 185; *Rackley v. Roberts,* 147 N. C., 201; *Carraway v. Lassater,* 139 N. C., 145; *Carter v. Rountree,* 109 N. C., 29; *Matthews v. Joyce,* 85 N. C., 258.  And these authorities are to the effect that, even when properly applied for, an irregular judgment is not to be set aside as a conclusion of law because of the irregularity, but only on a show of merits, and when the complaining party has proceeded with proper diligence."

It is insisted in the next place that the clerk's order appointing a guardian for Forest M. Groves is void, because the clerk had no legal right to make such appointment upon the certificate of Dr. Hall.  C. S., 2286, is as follows: "If any person is confined in any hospital for insane persons, in any state, territorial, or governmental asylum or hospital, in this State or any other state or territory, or in the District of Columbia, the certificate of the superintendent of such hospital declaring such person to be of insane mind and memory, which certificate shall be sworn to and subscribed before the clerk of the Superior Court or any notary public, or the clerk of any court of record of the county in which such hospital is situated, and certified under the seal of court, shall be sufficient evidence to authorize the clerk to appoint a guardian for such idiot, lunatic, or insane person."

It was evidently intended by the General Assembly that the certificate of insanity should be received and accepted as evidence only when made by the superintendent of a hospital which is subject to state, territorial, or governmental control, and not when made by the manager or superintendent of a private institution, who occupies no public official position and is not directly subject to governmental supervision.  The complaint alleges that Westbrook Sanatorium is a private institution, and for this reason we are of opinion that the certificate of Dr. Hall was not such as the statute contemplates, and did not authorize the clerk's appointment of the guardian.

The complaint alleges, however, that Forest M. Groves was restored to sound mind and memory, and thereafter ratified the proceedings both for partition and for the allotment of the widow's dower.  The demurrer admits this allegation; but the defendants contend that the alleged order of restoration to sanity was based upon a proceeding which is unconstitutional; that the jury was composed of six men, instead of twelve; and that Forest M. Groves was deprived of his property without due process of law.  This contention presents the third ground of objection to the complaint.

C. S., 2287, provides that when any insane person becomes of sound mind and memory, a petition in his behalf may be filed before the clerk of the Superior Court of the county of his residence setting forth the facts; whereupon, a jury of six freeholders shall be summoned to inquire

into the sanity of the person alleged to be sane, and if the jury shall find him to be sane, such person may make contracts and sell his property.

The complaint alleges that the fact of Groves' restoration was inquired into and determined by a tribunal created under the provisions of this statute.

It is not necessary to discuss the question at length. That a state cannot deprive a person of his property without due process of law does not necessarily imply that all trials in the state courts shall be by a jury composed of twelve men. *Maxwell v. Dow,* 176 U. S., 603; *Walker v. Sauvinet,* 92 U. S., 92. Nor is the contention of the defendants necessarily determined in their favor by Article I, section 19, of the Constitution of North Carolina. The right to a trial by jury, which is provided in this section, applies only to cases in which the prerogative existed at common. law, or was procured by statute at the time the Constitution was adopted, and not to those where the right and the remedy with it are thereafter created by statute. 16 R. C. L., 194. In *Lindsay v. Lindsay,* 45 L. R. A. (N. S.), 914, the Supreme Court of Illinois, in a discussion of the question presented here, said: "On the trial of the case before the county court, a jury of twelve men was demanded and was denied." The statute, as we have said, provided for trial by a jury of six. Upon this question the Court said: "The constitutional provision that 'the right of trial by jury, as heretofore enjoyed, shall remain inviolate,' does not apply. This is not a proceeding according to the course of the common law, in which the right of a trial by jury is guaranteed, but the proceeding is a statutory one, and the statute, too, enacted since the adoption of the Constitution. There was not, at the time of such adoption, the enjoyment of a jury trial in such a case. In reference to this subject, generally, Judge Cooley, in his work on Constitutional Limitations, p. 319, remarks: 'But in those cases which formerly were not triable by jury, if the Legislature provide for such a trial now, they may doubtless create for the purpose a statutory tribunal composed of any number of persons, and no question of constitutional power or right could arise.' "

The proceeding under section 2287 was not according to the course of the common law, and the constitutional inhibitions do not apply. The judgment overruling the demurrer is

Affirmed.