IN RE: ANNEXATION ORDINANCE ADOPTED BY THE CITY OF CHARLOTTE, DECEMBER 11, 1972, ALBEMARLE-YORK ROAD AREA

No. 90

(Filed 25 January 1974)

1. Jury § 1; Municipal Corporations § 2; Rules of Civil Procedure § 38— review of annexation proceedings — no right to jury trial

The provisions of G.S. 160-453.18(f) [now G.S. 160A-50(f)] authorizing review of annexation proceedings by the court without

a jury are not violative of Art. I, § 25 of the N. C. Constitution since the right to a jury trial guaranteed by that section applies only to cases in which the prerogative existed at common law or was procured by statute at the time the Constitution was adopted, nor have the provisions of G.S. 160-453.18(f) been superseded by the N. C. Rules of Civil Procedure since Rule 38(a) does not expand the right of trial by jury but only preserves the right where it existed previously.

2. **Public Officers § 8— performance of duty — burden of proof in showing irregularity of actions**

As a general rule it is presumed that a public official in the performance of his official duties acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest; however, the presumption of regularity of official acts is rebuttable by affirmative evidence of irregularity or failure to perform duty, but the burden rests on him who asserts unlawful or irregular conduct.

3. **Statutes § 5— construction — intent of Legislature controlling**

If a strict literal interpretation of a statute contravenes the manifest purpose of the Legislature, the reason and purpose of the law should control and the strict letter thereof should be disregarded.

4. **Municipal Corporations § 2— annexation proceedings — population credits — application to annexation area as a whole**

Where the city divided an area to be annexed into small study areas and applied population credits as provided for in G.S. 160-453.16(c)(1) [now G.S. 160A-48(c)(1)] only to the study area in which such credits were accumulated rather than to the whole area to be annexed, the city's action constituted an unreasonable departure from the statutory standards; therefore, since this appeal concerns annexation of petitioner's property only and the remainder of the annexation ordinance is not challenged, petitioner is entitled to have her 106 acre tract of property on which she is the sole resident excluded from annexation, though the study area of which her property is a part did meet the statutory population requirements.

Chief Justice BOBBITT dissenting.

Justice HIGGINS joins in the dissenting opinion.

PETITIONER appeals from judgment of *Martin, S. J.,* 12 February 1973 Extra Civil Session, MECKLENBURG Superior Court.

After the Charlotte City Council adopted a resolution of intent to annex the Albemarle Road-York Road area, fixed the date for a public hearing on the question of annexation, and published notice of said public hearing in The Charlotte Observer, the petitioner, Mrs. Charles DeForest Lucas, through her counsel, appeared before the City Council and requested that

her property be deleted from the annexation area. Her request was denied, and on 9 January 1973 she filed a petition in the superior court requesting review pursuant to G.S. 160-453.18 (now G.S. 160A-50). Judicial review of the annexation proceedings was conducted by Martin, S.J., at the 12 February 1973 Extra Civil Session, Mecklenburg Superior Court.

Petitioner's timely motion for a jury trial was denied and evidence was thereupon offered by both petitioner and the City of Charlotte. The court then made findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. On October 24, 1972 the Charlotte City Council passed a resolution stating its intent to consider the annexation of property known as the Albemarle Road-York Road Area, which was fully and accurately described in the resolution. In accordance with the provisions of the resolution, notice of a public hearing on the question of annexation was published in a local newspaper of general circulation on November 6, 7, 13, 20 and 27 of 1972. A public hearing was held on December 1, 1972. The Charlotte City Council enacted the ordinance in question on December 11, 1972 and set its effective date as June 30, 1973.

2. The metes and bounds description of the area to be annexed that was published on November 6, 1972 was not complete in that the description was to be continued to another page of the newspaper but was not in fact continued. The remaining publications which were published once a week for four successive weeks contained complete and accurate descriptions of the area to be annexed.

3. The Charlotte-Mecklenburg Planning Commission had begun considering the possibilities of annexation in 1969. Twelve areas were initially studied to determine whether each of these areas satisfied the criteria for annexation set forth in Part 3, Article 36, Chapter 160 of the General Statutes. Four of the areas were determined by the Planning Commission not to be appropriate for annexation under the statutory guidelines. Of the eight remaining areas, six, when considered collectively, physically formed one large area. Since each of the six areas had qualified for annexation under the Planning Commission's studies,

these areas were then considered, for purposes of annexation, as one area, the Albemarle Road-York Road Area. No attempt was made to ascertain whether the area as a whole could be properly annexed since a determination had been made earlier that each of the six study areas had qualified individually under Part 3, Article 36, Chapter 160 of the General Statutes. The resultant area contains approximately 17,899 acres and 37,948 residents or approximately 2.12 persons per acre.

4. In establishing the boundaries of the six study areas and thus determining the boundary of the annexation area in question, the Planning Commission adopted a policy of including as much property as possible within the area to be annexed. While the boundary of the area to be annexed is irregular, the evidence shows that this irregularity is largely due to actual patterns of residential, commercial, and institutional development. A factor which contributed to a minor extent to the irregularity was the respondent's conglomeration of the six study areas into one area for the actual process of annexation.

5. Evidence was presented to the Court concerning large tracts of very valuable property which were not included within the area to be annexed. These unannexed areas were referred to as "fingers" reaching into the area of annexation and were further identified as being in the vicinity of Monroe Road, Providence Road, Carmel Road and Quail Hollow Road. (These areas may also be found on petitioner's exhibit number 8: Monroe Road—1, 2 and 3; Providence Road—4, 5, 6, and 7; Carmel Road—8 and 9; Quail Hollow Road—10 and 11.) Uncontradicted evidence shows that: The area near Monroe Road contains 431.62 acres; the area in the vicinity of Providence Road contains 454.62 acres; the area near Carmel Road contains 571.5 acres; and the area around Quail Hollow Road contains 356.59 acres. Evidence presented by the petitioner as to the number of residences in these areas is conflicting and sketchy, but even accepting a liberal view of the evidence and applying the uncontroverted figure of 3.42 as the average number of persons per household in the area to be annexed, these large tracts could not have been included in the area to be annexed without disqualifying the entire area on the criteria of population density.

6. On January 9, 1973, Mrs. Ruth S. Lucas filed a petition in Superior Court seeking review of Charlotte Ordinance 689-X which directs the annexation of the Albemarle Road-York Road Area. The petitioner is the owner of real property, approximately 106 acres of which is included within the area to be annexed. The petitioner's property is located on the eastern edge of the annexation area. Her western border is formed by Campbell Creek, the southern border by Margaret Wallace Road and a portion of her property touches McAlpine Creek which forms much of the actual annexation boundary. Abutting petitioner's property is the Thompson Orphanage and a sixty-eight acre tract owned by petitioner's daughter and son-in-law. The orphanage normally cares for 40-50 children at one time. Independence Boulevard is located less than one thousand feet from the petitioner's property. As is pointed out on page seven of the Plan, Independence Boulevard is a major arterial road drawing concentrated commercial and residential development. This fact is further illustrated by the "Generalized Land Use" map contained in the Plan for annexation. Independence Boulevard, or U.S. 74, generates a great deal of commercial and industrial activity, not only close to the existing City Limit but also in the vicinity of petitioner's property. In addition to those commercial and industrial uses shown on the land use map, a major car dealership has recently opened on the northern side of Independence Boulevard close to its intersection with Margaret Wallace Road. A large development of single family residences is located approximately 700 feet west of the northern tip of the petitioner's property and a second development of single family residences is located a short distance north of petitioner's property. Just to the southwest of petitioner's property and across Independence Boulevard is a large apartment complex. The evidence established that the complex contained 224 units at the time the qualification study for the area was conducted in 1971 and that plans call for 2,000 units to be constructed eventually. Directly across from petitioner's property on Margaret Wallace Road are approximately twenty-six single family residences.

7. There is one house on the petitioner's property in which petitioner lives alone. The petitioner's property is not otherwise developed for commercial or residential purposes due to petitioner's desire not to develop her property.

In addition, petitioner agreed to restrict any development of her property to three acre lots when she conveyed sixty-eight acres of her property to her daughter and son-in-law, whose property was burdened with a similar restriction. Portions of petitioner's property which border McAlpine and Campbell Creeks are not suited for residential development since these areas are flooded when heavy rains cause the creeks to overflow their banks. However, the real reason, as petitioner has testified, why she does not wish her property to be included within the area to be annexed is that she cannot afford to pay the taxes on the property without developing it. She does not want to develop it because of the property's very low basis for purposes of capital gains taxation. If she can retain the property until she dies, the property will acquire a basis equal to its fair market value at the time of her death so that her devisees will receive a great economic benefit.

8. The petitioner has not presented any evidence that tends to show that she has in any way suffered any injury because the metes and bounds description published on November 6, 1972 was incomplete. There is no evidence which tends to show that she was misled or did not know that her property would be included within the area to be annexed.

9. Section 3 of Ordinance No. 689-X reads as follows:

"That it is the purpose and intent of the City of Charlotte to provide services to the area being annexed under the ordinance, as set forth in the report of plans for services approved by the City Council on the 6th day of November, 1972, and filed in the office of the Clerk for public inspection."

The ordinance did not contain nor paraphrase the plan for providing municipal services to the area as set forth in the plan prepared to satisfy Sec. 160-453.15 of the General Statutes.

Upon the foregoing FINDINGS OF FACT, the Court makes the following:

CONCLUSIONS OF LAW

1. The area as designated by the respondent and known as the Albemarle Road-York Road Area meets all criteria

authorizing annexation under Part 3, Article 36, Chapter 160 of the General Statutes. The annexation proceedings instituted by the respondent show *prima facie* that there has been substantial compliance with the essential provisions of these statutes.

Certainly a notice publication in some form of the public hearing is an essential element of an annexation proceeding. However, it is not necessary for this Court to decide if each and every aspect of the notice publication as outlined in Sec. 160-453.17(b) must be exactly followed before an otherwise proper annexation proceeding is to be remanded. The Court is especially mindful of this consideration where, as here, there has been no allegation or showing of any injury to the petitioner resulting from the alleged failure to publish the notice according to the letter of the statute. Suffice it to hold under the facts of this petition that the publication of notice on November 6, 1972, even though incomplete in its boundary description, may be properly considered in computing whether the time period between the dates of the first and last publication amounts to twenty-two days. So considered there are twenty-two days between the dates of first and last publication. Alternatively, the Court holds, in any event, that the twenty-two day restriction is not an essential element of the annexation statutes so that its violation, absent a showing of material injury, does not command that the ordinance be remanded, at least where every other notice requirement has been followed explicitly.

2. The petitioner has admitted in open Court that the respondent has followed the letter of the annexation statutes (except for the publication of notice). Under the facts of this case, the literal requirements of Part 3, Article 36, Chapter 160 of the General Statutes have been met.

3. While this Court does have only limited jurisdiction in reviewing an annexation proceeding, that jurisdiction does include a judicial determination of whether the respondent abused its discretion in improperly establishing the boundary of the area to be annexed so as to include the petitioner's property. Also within this Court's power is a determination of whether the application of the annexation statutes for cities of over 5,000 residents to the petitioner's property under the facts of this petition is proper

under the Constitution of North Carolina and the Fourteenth Amendment to the United States Constitution. However, these are heavy burdens to bear and the petitioner has not met these burdens. The evidence properly before this Court does not establish any abuse of discretion. While the Director of the Charlotte-Mecklenburg Planning Commission testified that the policy followed in defining the area to be annexed was to include as much property as possible regardless of that property's development, an examination of the evidence reveals that the areas actually to be annexed are either developed for urban purposes or are undergoing such development. At least the petitioner has not satisfied this Court to the contrary, and the petitioner does have the burden of proof on this point. The fact that a particular piece of property is undeveloped and included within an area to be annexed is not evidence of abuse of discretion by the annexing body where there is competent evidence that property in close proximity is undergoing such development. The fact that the boundary of the annexation area may be irregular in appearance is not, by itself, evidence of arbitrary and capricious action by the governing body in instituting an annexation proceeding. The applicable law requires only that the boundary follow urban patterns of development and, whenever practical, natural topographic features. Absent a showing of bad faith or deviation from these statutory guidelines in including petitioner's property, the petitioner cannot establish any abuse of discretion. No evidence of bad faith is before the Court and the petitioner has not satisfied the Court that the respondent deviated from the statutory guidelines, either in their letter or their spirit. Specifically, it has not been established that respondent used different interpetations of these statutory guidelines in locating a boundary line for one study area than was used in other study areas. Also it has not been shown that respondent's combining of six adjacent study areas into one large area for purposes of an annexation proceeding is improper.

4. While the petitioner's property is undeveloped, whether because of personal desires of self-imposed, developmental restrictions, the area in which it is located is either developed for urban purposes or is undergoing commercial and residential development.

5. Neither Part 3, Article 36, Chapter 160 of the General Statutes nor its application by respondent to include the petitioner's property within the Albemarle Road-York Road Area violated the Fourteenth Amendment to the United States Constitution or Article I, Sections 8, 19 and 25 of the North Carolina Constitution.

6. Section 3 of Ordinance No. 689-X complies with G.S. 160-453.17(c)(2) [sic, evidently intended to be G.S. 160-453.17(e)(2)]. Even if the statute were to be interpreted to state that the entire Plan, or at least a summation of it, for extending services into the area was to be included in Ordinance 689-X, the omission would not be fatal to the annexation proceeding. Such a statutory provision could not be an essential element of the applicable annexation statutes. The respondent has bound itself not only morally but legally to provide the services outlined in the Plan. This is true regardless of whether the Plan is re-recited in the ordinance. Section 3 clearly identifies the Plan as being definitive on the question of how the area is to be treated upon the effective date of annexation.

7. The respondent properly exercised its discretion in following the flow of McAlpine Creek so as to include petitioner's property within an area to be annexed into the City of Charlotte.

Upon the foregoing findings of fact, it is ORDERED, ADJUDGED AND DECREED that the action of the City Council of the City of Charlotte in the adoption of Annexation Ordinance is affirmed and the annexation may take place as scheduled. The costs of this action shall be taxed against the petitioner.

Petitioner appealed to the Court of Appeals, and we allowed motion to bypass that court prior to determination of the controversy. The case is now before the Supreme Court for initial appellate review.

By virtue of a consent order this appeal concerns petitioner's property only, permitting the annexation to be effective with respect to the remainder of the areas annexed concerning which no appeal has been taken. G.S. 160-453.18(h).

*Craighill, Rendleman & Clarkson, P.A., by J. B. Craighill, Attorneys for the petitioner appellant, Ruth S. Lucas.*

*Henry W. Underhill, Jr.; H. Michael Boyd; W. A. Watts, Attorneys for respondent appellee, City of Charlotte.*

HUSKINS, Justice.

**[1]** Petitioner assigns as error the denial of her motion for a jury trial incident to review of the annexation proceeding. She contends the constitutional questions involved in this proceeding are matters with respect to which she is entitled to trial by jury and that the provisions of G.S. 160-453.18(f) (now G.S. 160A-50(f)) relating to review without a jury are (1) violative of Article I, Section 25 of the Constitution of North Carolina and (2) are superseded by the Rules of Civil Procedure.

The provisions of Article I, Section 25 of the present Constitution of North Carolina are similar to the provisions of the first sentence of Article I, Section 19 of the Constitution of 1868. A similar contention with respect to the unconstitutionality of G.S. 160-453.18(f) was rejected by this Court in *In re Annexation Ordinances,* 253 N.C. 637, 117 S.E. 2d 795 (1960). We there said:

> "The procedure and requirements contained in the Act under consideration being solely a legislative matter, the right of trial by jury is not guaranteed, and the fact that the General Assembly did not see fit to provide for trial by jury in cases arising under the Act, does not render the Act unconstitutional.

> "The right to a trial by jury, guaranteed under our Constitution, applies only to cases in which the prerogative existed at common law, or was procured by statute at the time the Constitution was adopted. The right to a trial by jury is not guaranteed in those cases where the right and the remedy have been created by statute since the adoption of the Constitution. *Groves v. Ware,* 182 N.C. 553, 109 S.E. 568; *McInnish v. Bd. of Education,* 187 N.C. 494, 122 S.E. 182; *Hagler v. Highway Commission,* 200 N.C. 733, 158 S.E. 383; *Unemployment Comp. Com. v. Willis,* 219 N.C. 709, 15 S.E. 2d 4; *Belk's Dept. Store, Inc. v. Guilford County,* 222 N.C. 441, 23 S.E. 2d 897; *Utilities Commission v. Trucking Co.,* 223 N.C. 687, 28 S.E. 2d 201."

Moreover, the provisions of G.S. 160-453.18(f) authorizing review of annexation proceedings by the court without a jury have not been superseded by the North Carolina Rules of Civil Procedure. Rule 38(a) of the Rules of Civil Procedure provides:

"The right of trial by jury as declared by the Constitution or statutes of North Carolina shall be preserved to the parties in-

violate." This rule was not designed to expand the right of trial by jury but only to preserve the right where it had existed previously. Since the General Assembly has never granted the right to jury trial in judicial review of annexation proceedings, Rule 38(a) by its own language is inapposite. This assignment of error is overruled.

Petitioner contends that the City "acted arbitrarily, capriciously and unreasonably in that it did not uniformly apply the same standards throughout the entire Annexation Area."

Although the courts are vested with jurisdiction to review annexation proceedings, the scope of judicial review is limited by statute. G.S. 160-453.18 (now G.S. 160A-50) specifies the inquiries to which the courts are limited. These include the question presented by this case: Has the City met the requirements of G.S. 160-453.16(c)(1) as they apply to petitioner's property? See G.S. 160-453.18(a) and (f)(3); *In re Annexation Ordinance*, 278 N.C. 641, 180 S.E. 2d 851 (1971).

[2] As a general rule it is presumed that a public official in the performance of his official duties "acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest. [Citation omitted.] The presumption of regularity of official acts is rebuttable by affirmative evidence of irregularity or failure to perform duty, but the burden of producing such evidence rests on him who asserts unlawful or irregular conduct. The presumption, however, prevails until it is overcome by . . . evidence to the contrary. . . . Every reasonable intendment will be made in support of the presumption. . . . " *Huntley v. Potter*, 255 N.C. 619, 122 S.E. 2d 681 (1961); *accord*, *Styers v. Phillips*, 277 N.C. 460, 178 S.E. 2d 583 (1971). Hence the burden is on the petitioner to overcome the presumption by competent and substantial evidence. 6 N. C. Index 2d, Public Officers, § 8 (1968).

Ordinance 689-X to extend the corporate limits of Charlotte by annexation of the Albemarle Road-York Road Annexation Area discloses that the Charlotte City Council found and declared that the described annexation area met the requirements of G.S. 160-453.16(b) and (c)(1) (now G.S. 160A-48(b) and (c)(1)). Petitioner does not contend that the requirements of G.S. 160-453.16(b) have not been met by the City but strongly insists that G.S. 160-453.16(c)(1), properly interpreted and

properly applied administratively, requires. exclusion of her land from the Albemarle Road-York Road Annexation Area.

G.S. 160-453.16(c) (1) (now G.S. 160A-48(c) (1)) reads in pertinent part as follows: "(c) Part or all of the area to be annexed must be developed for urban purposes. An area developed for urban purposes is defined as any area which . . . (1) Has a total resident population equal to at least two persons for each acre of land included within its boundaries . . . . " The narrow issue presented, and here decided, is whether the City used "population credits" arbitrarily, capriciously or in an unreasonable manner so as to produce unfair and inequitable results not in keeping with legislative intent. On this question we now consider the evidence hereinafter narrated.

The Albemarle Road-York Road Annexation Area covers 17,899 acres. That area was initially broken down by the City into six "study areas," numbered 1, 2, 3, 4, 11 and 12 on Respondent's Exhibit 1. (Other study areas numbered 5, 6, 7, 8, 9 and 10 on said exhibit, two of which are the subject of litigation in other annexation cases, have no pertinence here.)

Testimony of Michael Schneidermann, Charlotte City Planner, discloses that each study area encompasses land contiguous to the present City boundary and that Study Areas 1, 2, 3, 4, 11 and 12, comprising the Albemarle Road-York Road Annexation Area, are contiguous to each other. These six study areas were thus treated as one area to be annexed. However, the City applied the statutory standard of population density—at least two persons per acre—to each individual study area separately in order to qualify it for annexation. For example, petitioner's property is located in Study Area No. 4, and her 107 acres with a population of one person was annexed because there was enough population in excess of two per acre from the developed urbanized portion of Study Area No. 4 to "populate" it, and other vacant acreage around it, at the rate of two persons per acre.

Testimony of William E. McIntyre, the Planning Director for Charlotte-Mecklenburg Planning Commission, discloses that "the philosophy followed was, with sufficient population credit, just to move out and take in additional open area, whether that area was developed for urban purposes or not."

Petitioner's evidence discloses that her land, 107 acres with a population of one person, is located on the outer edge

of Study Area No. 4, yet lies within the area to be annexed. Her evidence further shows that many tracts of land having a higher value per acre, and more densely populated than hers, which lie just outside the outer boundary of other study areas were not included in the Albemarle Road-York Road Annexation Area. One of these tracts lies along Providence Road, within Study Area No. 2 but outside the annexation boundary, and is designated by the figure 5 on Petitioner's Exhibit 8. This land contains 102 acres, is divided into sixteen separate tracts, and has a fairly large residential population. When explaining why petitioner's land was annexed and these sixteen tracts aggregating 102 acres were not, Mr. Schneidermann had this to say:

"In regard to Petitioner's Exhibit Number 8 and that area designated as Number 5, according to the evidence containing 102.49 acres, it was not included within the annexation area because the density would not have been sufficient to qualify the entire area. And in the light of the criteria, it was left out because we didn't have sufficient population. The criteria was that it have a density of two persons per acre.

\*    \*    \*    \*

"It is very true that if we had left out Mrs. Lucas' 106 acres, completely undeveloped except for one person living on it, we could have taken in instead, without upsetting our population criteria in that area, Area Number 5 as shown on Plaintiff's [Petitioner's] Exhibit 8, with only 102 acres in it and with sixteen different tracts and lots of people living on it, but try to understand our procedure that was followed. When we performed these studies, we qualified each area individually, separately and independently from each other. Each area that is indicated on the maps was qualified separately. You can't really give credit to one area, because they were done separately. But we did lump them together in one annexation package.

\*    \*    \*    \*

"We qualified each study area individually instead of all together but uniformly as far as criteria. We took a standard and applied it. *The standard I have been speaking about was not applied to the entire area as a whole but to the smaller study areas that made up the entire area.* [Emphasis added.]

In re Annexation Ordinance

*  *  *  *

"If we had applied that criteria to the whole area, we would have been able to take in, to the City's advantage, property around there (indicating property omitted in the Providence Road area) that has more population living on it and a higher tax value. We did have sufficient population credit to take in Mrs. Lucas' property, evidently, yes, because it qualified. . . . The whole story is not that we divided the entire area and applied the standard to the smaller study areas instead of to the overall area but that is part of what we did."

Mr. Schneidermann, still referring to areas excluded adjacent to the outer boundaries of Study Area No. 2, testified:

"As to whether if I had left out Mrs. Lucas' property, in addition to taking in that Area Number 5 that we mentioned, 102 acres, with sixteen tracts on it, we could easily have taken in Area Number 6 [on Petitioner's Exhibit 8] which has only 47 acres and has twenty-five different tracts and quite a number of different tracts on it, yes, when they were all grouped together, yes, we could have, yes. I think it is very important to keep in mind that these studies were performed and these surveys were done independently of one another and they qualified individually. . . . If we had taken in those areas, Numbers 5 and 6, (on Petitioner's Exhibit 8) which together total over 41 different tracts and less than 150 acres, we would have gotten credit there for a lot more than the one person that we got when we took in Mrs. Lucas' property."

Still other tracts of land in the Carmel Road-Providence Road area which were discussed by Mr. Schneidermann were excluded from the area to be annexed by reason of the "study area" formula used when applying population credits.

The foregoing testimony discloses that the statutory standard of two persons per acre was not applied to the 17,899-acre "area to be annexed" but to the small study areas that made up the whole. The City argues that since each study area qualified under the two-persons-per-acre rule, the whole area to be annexed also met that standard. The argument misses the point. The initial decision to use the "study area" technique determined, and perhaps even predetermined, which tracts of land containing fewer than two persons per acre would be annexed,

and which tracts would be excluded. Under this method the City never really considered the area to be annexed as a whole in applying the two-persons-per-acre standard. As a result, tracts of land more densely populated, considerably more valuable per acre, and better suited to annexation than petitioner's land were excluded. Some of these excluded areas are valued for tax purposes at more than $11,000 per acre, whereas petitioner's lands are appraised for taxation at $877 per acre.

[3] G.S. 160-453.16 deals with the character of the area to be annexed. In construing and interpreting the language of that statute, we are guided by the primary rule of construction that the intent of the Legislature controls. *Underwood v. Howland, Comr. of Motor Vehicles,* 274 N.C. 473, 164 S.E. 2d 2 (1968); *Freeland v. Orange County,* 273 N.C. 452, 160 S.E. 2d 282 (1968); 50 Am. Jur., Statutes, § 223 (1944). A construction which will operate to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language. *Ballard v. Charlotte,* 235 N.C. 484, 70 S.E. 2d 575 (1952). If a strict literal interpretation of a statute contravenes the manifest purpose of the Legislature, the reason and purpose of the law should control and the strict letter thereof should be disregarded. *Duncan v. Carpenter,* 233 N.C. 422, 64 S.E. 2d 410 (1951); *State v. Barksdale,* 181 N.C. 621, 107 S.E. 505 (1921). And, where possible, "the language of a statute will be interpreted so as to avoid an absurd consequence." *Hobbs v. Moore County,* 267 N.C. 665, 149 S.E. 2d 1 (1966).

[4] When G.S. 160-453.16(c)(1) is subjected to these rules of construction, it is quite clear that the Legislature intended "the area to be annexed" to mean the entire 17,899 acres embraced in the Albemarle Road-York Road Annexation Area rather than numerous "study areas" into which the area to be annexed has been divided. Not only must the entire annexation area *meet* the requirements of G.S. 160-453.16(c)(1), but even more importantly, the tests to determine whether an area is developed for urban purposes must be *applied* to the annexation area as a whole. The City has acted under a misapprehension of the law, and has misapplied the statutory standard, in deciding that population credits should be applied only in the study area in which such credits were accumulated rather than applied uniformly to the whole "area to be annexed."

We hold that petitioner's evidence is sufficient to overcome the presumption of regularity and demonstrates that the legis-

lative standard prescribed by G.S. 160-453.16(c)(1) has unwittingly been applied contrary to the legislative intent. The City's decision to follow the study area formula with respect to population credits was an unreasonable departure from the statutory standards.

Since this appeal, by virtue of the consent order, concerns annexation of petitioner's property only and permits annexation to be effective with respect to the remainder of Albemarle Road-York Road Annexation Area concerning which no appeal has been taken, *see* G.S. 160-453.18(h), the annexation of the remainder of that area is now an accomplished fact insofar as this case is concerned. The statutory procedure prescribed by G.S. 160-453.16(c)(1) not having been followed in annexing the property of Mrs. Lucas, petitioner herein, this case is remanded to Mecklenburg Superior Court with instructions to remand Ordinance 689-X to the Charlotte City Council for amendment of the boundaries excluding petitioner's property from the Albemarle Road-York Road Annexation Area.

The judgment below, insofar as it affects petitioner's property, but not otherwise, is

Reversed.

Chief Justice BOBBITT dissenting.

Upon compliance with standards prescribed by G.S. 160-453.16, the General Assembly has authorized the governing body (city council) to determine *what* area is to be annexed. This area may lie wholly or in part to the north, or to the south, or to the east, or to the west, of the existing city limits. The court has no authority to substitute its discretion for that of the municipal governing body. Annexation of the area to be annexed may be completed when provision is made for the extension of municipal services to such area. G.S. 160-453.17.

An annexation proceeding relates to *land* within a described area, without regard to the personal circumstances of the owner of any particular parcel or tract wholly or partly within its boundaries. In the present case, I find no valid objection to the annexation proceedings. Since each of the study areas is in full compliance, it follows that the composite of these areas is in full compliance.

The extension of the city limits to include undeveloped land is to enable the municipality to make plans for the orderly development of such areas. If the area to be annexed when considered *as a whole* meets the statutory requirements, the owner of an undeveloped tract is not entitled to have it excluded from the annexation because when considered alone it does not meet the statutory requirements. *In re Annexation Ordinance,* 255 N.C. 633, 642-43, 122 S.E. 2d 690, 698 (1961).

The result of the Court's decision is to validate the annexation in all respects except as to property of appellant. The annexation boundary would be McAlpine Creek until appellant's property is reached. Thence it would diverge from McAlpine Creek and follow the lines of appellant's property until it reaches a new location on McAlpine Creek. Thence it would proceed with the creek. The city council has not approved an annexation area having such boundaries.

Justice HIGGINS joins in this dissenting opinion.