PEOPLE *v.* FRONTCZAK.

1. CRIMINAL LAW—SEX DEGENERATES.

There is no law of this State penalizing or subjecting to hospitalization any person, not insane, who appears "to be a sex degenerate" and appears "to be suffering from a mental disorder characterized by marked sexual deviation, with tendencies dangerous to public safety" (Act No. 196, § 1b, Pub. Acts 1937).

2. CONSTITUTIONAL LAW—FORMER JEOPARDY—JURY OF VICINAGE.

When the law penalizes an overt act it cannot, under criminal procedure and under the guise of hospitalization, in another court and a different jurisdiction, try him on the footing of his conviction elsewhere and add to or subtract or change his sentence (Act No. 196, § 1b, Pub. Acts 1937).

3. CRIMINAL LAW—SEX DEGENERATES—STATUTES—FORMER JEOPARDY.

Statute providing for examination of prisoner, serving sentence for an overt act, who appears "to be a sex degenerate" and appears "to be suffering from a mental disorder characterized by marked sexual deviation, with tendencies dangerous to public safety" by court having jurisdiction of place of confinement and for hospitalization or institutionalization, if a part of code of criminal procedure which it purports to amend, is void as subjecting him to two trials and convictions in different courts for a single statutory crime; if not for a single offense then one trial is for a penalized overt act and the other for no statutory offense but triable by jury of another vicinage; if not under such code then the statute is no amendment or addition to it and is a mere estray or nullity (Act No. 196, § 1b, Pub. Acts 1937).

4. CONSTITUTIONAL LAW—DUE PROCESS—HOSPITALIZATION OF SANE PERSONS—SEX DEGENERATES.

Due process of law is not afforded in merely providing procedure for hospitalization with curative treatment, of sane persons who may be sex degenerates where no provision is made declaring them amenable to compulsory restraint because they are such persons (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16; Act No. 196, § 1b, Pub. Acts 1937).

5. SAME—RIGHTS OF AN ACCUSED—SANE PRISONERS—SEX DEGENERATES.

Prisoner, a sane person serving sentence under plea of guilty of charge of gross indecency, may not as a potential like offender, be kept in confinement under the police power by examination in a court having jurisdiction of place of confinement, suspension of valid sentence, and change of place and character of confinement and treatment without violating constitutional provision securing the rights of an accused (Const. 1908, art. 2, § 19; Act No. 196, § 1b, Pub. Acts 1937).

BUTZEL, BUSHNELL, and MCALLISTER, JJ., dissenting.

Appeal from Ionia; Hawley (Royal A.), J. Submitted April 19, 1938. (Docket No. 117, Calendar No. 39,775.) Decided October 5, 1938. Rehearing denied November 10, 1938.

George Frontczak was convicted and sentenced for the crime of gross indecency. On petition of Hilmer Gellein, Commissioner of Pardons and Paroles, for an investigation of respondent and that respondent be adjudged a menace to public safety and be committed to a State hospital or institution in accordance with Act No. 196, Pub. Acts 1937. Petition dismissed. Petitioner appeals. Affirmed.

*Raymond W. Starr,* Attorney General, *Charles J. Dovel* and *Joseph Zwerdling,* Assistant Attorneys General, for petitioner.

WIEST, C. J. This is an appeal in behalf of the people from a holding in the circuit court for the county of Ionia, that Act No. 196, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 17329–1 *et seq.,* Stat. Ann. § 28.1072 *et seq.*), is unconstitutional and refusal of that court to act under its provisions.

April 19, 1937, in the recorder's court for the city of Detroit, on his plea of guilty, George Frontczak, a resident of Detroit, was convicted of gross indecency and sentenced to a minimum term of 30 days and a maximum term of five years in the Detroit house of correction. From that prison he was transferred to the Michigan reformatory at Ionia. Before enactment of Act No. 196, Pub. Acts 1937, defendant was serving his sentence in the reformatory at Ionia. While defendant was so confined, under sentence, the enactment at bar became effective on July 14, 1937. On July 21, 1937, the State commissioner of pardons and paroles filed a petition

in the circuit court for the county of Ionia, invoking action under the new statute to have defendant committed to a State hospital on the ground, employing the language of the statute, that defendant ''though not insane, appears to be a sex degenerate, and appears to be suffering from a mental disorder characterized by marked sex deviation, with tendencies dangerous to public safety.''

To understand properly the points involved it is necessary to mention the provisions of the former statute, which the act of 1937 purported to amend and extend.

Act No. 175, Pub. Acts 1927, revised, consolidated and codified the laws of the State relating to criminal procedure, and designated the same ''the code of criminal procedure.'' See 3 Comp. Laws 1929, §§ 17116–17512. Chapter 9 of that code (3 Comp. Laws 1929, §§ 17329–17354) relates to judgments and sentences in criminal cases. By Act No. 88, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 17329–1, Stat. Ann. § 28.1073), that chapter was amended by adding a new section at the end to stand as section 1a thereof, under which courts of record, having jurisdiction of criminal offenses, were empowered:

''When a person convicted of * * * indecent exposure, * * * gross indecency, * * * shall, though not insane, feeble-minded or epileptic, appear to be psychopathic, or a sex degenerate, or a sex pervert, with tendencies dangerous to public safety, the trial court before pronouncing sentence shall institute and conduct a thorough examination and investigation of such person, and of all the facts and circumstances, shall call two or more reputable physicians, including one psychiatrist and other credible witnesses. * * * If it is proved to the satisfaction of said judge or a jury that such person is psychopathic, or a sex degenerate, or a sex pervert, possessed of

mental tendencies inimical to society, and that, because thereof, such person is a menace to the public safety, then the court, in pronouncing sentence, shall so adjudge: Provided, however, That upon such examination and investigation, such person shall be entitled to a jury hearing. If a prison or jail term is imposed, the court shall include in the commitment an order that upon expiration of such prison or jail term, * * * said person be removed and committed to such suitable State hospital or State institution as the court may designate in such commitment, to remain in such State hospital or State institution until said court shall adjudge that such person has ceased to be a menace to the public safety because of said mental condition."

This amendment to the code of criminal procedure was the genesis of the further amendment and addition in 1937, which is involved in the case at bar, and is quoted to show that the procedure there provided was in the trial court, before the trial judge and before sentence, and with right of the accused to a trial by jury of the vicinage.

Passing consideration of the validity of that addition, as not here involved, we come to the amendment of 1937, which amended the above section and added five new sections, of which the amendment and one added section are here principally involved.

Act No. 196, Pub. Acts 1937, amended section 1a (Comp. Laws Supp. 1937, § 17329–1, Stat. Ann. 1938 Cum. Supp. § 28.1073) of the former act so as to provide for the examination and procedure after conviction and before sentence, and for commitment to a suitable State hospital, with suspension of sentence or holding the same in abeyance, "until the court, upon application by the superintendent or assistant superintendent of the institution or any other interested party, and hearing, after receiving a report from the medical superintendent,

or after proceeding in the manner herein required upon the original examination and investigation, shall find that such person has ceased to be a menace to the public safety because of such tendencies and mental condition: Provided, however, That such examination, investigation and hearing shall be held at least once each year by the court unless waived by such person in open court.''

The section also provides that upon such release the court may impose sentence and commit such person to prison for the term provided by law for his offense, awarding him time, however, spent in the hospital or may place him on probation or release him from further custody as the circumstances may warrant.

It is to be noted that this amendment retained jurisdiction in the trial court over the whole procedure.

We now come to the added section 1b, of the 1937 act (Comp. Laws Supp. 1937, § 17329-2, Stat. Ann. 1938 Cum. Supp. § 28.1073[1]), effective after defendant's conviction, sentence, and imprisonment, and reaching not only subsequent offenders but previous offenders. That section provides:

''If any such hearing shall not have been conducted by the court sentencing any person upon conviction or plea of guilty of any of the said offenses, and such person shall have been committed to any penal institution, jail or prison, and if prior to the expiration of his sentence or his discharge, pardon, or parole, such person, though not insane, shall appear to be a sex degenerate or a sex pervert, or appear to be suffering from a mental disorder characterized by marked sexual deviation, with tendencies dangerous to public safety, the commissioner of pardons and paroles shall file his petition in the circuit court of the county where such person may be confined, setting forth the facts relative to said

conviction and said prisoner, and the circuit court of said county shall institute and conduct a thorough examination and investigation of such person, and shall otherwise proceed in the manner provided in section one-a of this chapter.

"If it shall be determined and adjudged by the court that such person is a menace to public safety for any of the reasons stated in the petition, the court shall enter an order that said person be removed and committed to such suitable State hospital or State institution as the court may designate in such order, sentence to be suspended or held in abeyance during the time such person is in the custody of such institution and such person to remain in such State hospital or State institution until the said court, upon application and proceedings in accordance with the provisions of section one-a, shall find that said person has ceased to be a menace to the public safety because of said tendencies and mental condition. Upon such finding, such person shall be released from the custody of such hospital or institution and after allowing and crediting on the sentence originally imposed the time spent in any such hospital or institution, the court shall return such person to the jail or prison to which he was formerly committed, to serve the remainder of his sentence (if any) according to law, subject to any parole or other further order affecting such person."

This enactment is more than an inquest relative to the mental condition of a prisoner because the company in which it is found is a part of criminal procedure following conviction of a criminal offense and after sentence and during confinement and, in the instance at bar, removed from the jurisdiction of the trial court and domicile of the prisoner and vested in another court, at a point removed from the prisoner's former domicile, and where he is to be tried by a jury in a vicinage where the criminal law

has him in confinement and where he committed no crime. The statute requires the petition to negative insanity of the prisoner, and there is no law of the State penalizing or subjecting to hospitalization any person who appears "to be a sex degenerate" and appears "to be suffering from a mental disorder characterized by marked sexual deviation, with tendencies dangerous to public safety." When the law penalizes an overt act it cannot, under criminal procedure and under the guise of hospitalization, in another court and a different jurisdiction, try him on the footing of his conviction elsewhere and add to or subtract or change his sentence.

Section 1b, added by the 1937 act, if considered a part of criminal procedure, is void, as subjecting an accused to two trials and convictions in different courts for a single statutory crime, with valid sentence interrupted by supplementary proceeding in another court, with confinement in a non-penal institution and with possible resumption of imprisonment under the original sentence. If not for a single offense, then one trial is for a penalized overt act and the other for having a mental disorder, characterized by marked "sexual deviation." For an overt act offense the accused has a right to trial by jury of the vicinage, while under this act, for no statutory offense, he is to be tried by a jury of another vicinage, possibly far removed from his former domicile and friends and, if penniless and friendless, and the procedure is not under the criminal code he cannot obtain counsel or have witnesses at public expense. If the procedure is not under the criminal code, then the enactment is no amendment or addition to that code and a mere estray and a nullity. We must class it where we find it placed by its authors, and we find

it in the mentioned criminal code chapter relating to judgments and sentences in criminal cases.

The attorney general contends that it is a civil proceeding and analogous to statutory inquests relative to insane prisoners, which is civil in nature.

It is obvious that in such instances the inquest bears no relation to the conviction; jurisdiction attaches because of insanity. In the instance at bar jurisdiction is not given until after conviction and the prisoner is averred to be sane and change in confinement under sentence is contemplated for, while undergoing hospitalization, he gets credit on his sentence.

Hospitalization, with curative treatment and measures may be desirable but, until the law makes a sane person amenable to compulsory restraint as a sex deviator, it falls short of due process in merely providing procedure.*

Under this act defendant is under sentence for an overt sex deviation offense and, as a potential like offender, it is sought to keep him in confinement under exercise of the police power. The police power, under such circumstances, is not a civil proceeding, comparable to that in cases of insane persons.

The mentioned amendment and addition do not fall within the title, unless constituted criminal procedure and, as such, violates the constitutional provision securing the rights of an accused. Const. 1908, art. 2, § 19.

Affirmed.

Sharpe, Potter, Chandler, and North, JJ., concurred with Wiest, C. J.

---

* See U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16.—Reporter.

Butzel, J. (*dissenting*). The proceedings in the instant case under section 1b of Act No. 196, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 17329–2, Stat. Ann. 1938 Cum. Supp. § 28.1073[1]), are solely in the nature of an inquest and do not constitute a criminal proceeding in the sense that the prisoner is subjected to a trial for a statutory crime. Nevertheless, the statute is properly an amendment to the code of criminal procedure (3 Comp. Laws 1929, § 17116 *et seq.,* Stat. Ann. § 28.841 *et seq.*). Certain other chapters of the criminal code deal with subjects properly embraced therein though not relating to the trial of any person for any particular crime. Chapter 11 deals with probation; chapter 12 with proceedings to prevent crime; and chapter 13 with proceedings for the discovery of crime. The criminal code attempts to assemble proceedings affecting or relating to crime and criminals and the act in question contains provisions which are germane, auxiliary and incidental to that general purpose. It therefore constitutes a proper amendment to the code and is embraced under the title thereof. *People* v. *Palm,* 245 Mich. 396.

Act No. 196, Pub. Acts 1937, does not provide punishment for any criminal offense nor does commitment thereunder constitute a conviction of a crime. The proceedings under the statute are brought to determine the mental and physical condition of a prisoner convicted of one of a number of sex crimes. Experience, unfortunately, has shown that sex offenders are too apt to be repeaters who possess an urge that prompts them upon their release to commit other sex crimes, frequently of the most serious nature. While these offenders are not classified legally as being insane, they are nevertheless suffering from obsessional or compulsive neuroses. They pre-

sent an acute problem. They are pitiable objects sadly in need of hospitalization or institutionalizing for their own cure and safety as well as for the protection of the public. The statute recognizes this fact and seeks only to protect and possibly to cure these unfortunate and dangerous persons. It is analogous to those statutes providing for the commitment of the insane, feebleminded, dipsomaniacs, drug addicts, and persons infected with communicable diseases. The State unquestionably has the power to commit insane persons, *Underwood* v. *People,* 32 Mich. 1 (20 Am. Rep. 633), and to quarantine persons infected with communicable diseases. *Rock* v. *Carney,* 216 Mich. 280 (22 A. L. R. 1178). Such proceedings do not involve trials for crime, but are merely inquests. The mental and physical disorders with which sex degenerates are afflicted require their segregation and hospitalization just as much as similar treatment is required for insane persons and those infected with communicable diseases. To effect such segregation, no more than an inquest, as is provided by the instant statute, is required. The prisoner is not being committed as punishment for a crime and the proceedings do not constitute a criminal trial. *Ex parte Liggett,* 187 Cal. 428 (202 Pac. 660) ; *In re Bresee,* 82 Iowa, 573 (48 N. W. 991). For this reason, constitutional limitations applicable solely to trials for crimes are not violated even though not complied with by the statute.

The prisoner was convicted of the crime of gross indecency prior to the enactment of Act No. 196, *supra,* but the act is not an *ex post facto* law as to the present proceedings. The Constitution of 1908, art. 2, § 9, applies only to criminal offenses. *Scott* v. *Smart,* 1 Mich. 295. The prisoner is not being tried for a previous criminal offense. An inquest is

merely being held to determine whether he possesses "tendencies dangerous to public safety," at a time subsequent to the passage of the act.

The objection that the act is unconstitutional because it deprives the prisoner of a trial by a jury of the vicinage disappears when it is seen that the proceedings are not a trial for a criminal offense nor such as would have required a jury of the vicinage before the adoption of the Constitution. Article 2, § 19, of the Constitution of 1908 provides for a jury only in "every criminal prosecution." If, as in the instant case, the proceedings do not constitute a trial for a crime, the liberty of a convicted criminal may be restrained without a jury trial. *People* v. *Dudley,* 173 Mich. 389. Article 2, § 13, in providing that "the right of jury trial shall remain," establishes only such right as existed prior to the adoption of the first Constitution, or, as stated in *Swart* v. *Kimball,* 43 Mich. 443, as was known to the previous jurisprudence of this State. There is abundant authority to the effect that a jury trial was not required at common law in proceedings for the commitment of insane persons and is consequently not required under the State Constitution. *Crocker* v. *State,* 60 Wis. 553 (19 N. W. 435); *In re Bresee, supra; Ex parte Liggett, supra; Ex parte O'Connor,* 29 Cal. App. 225 (155 Pac. 115); *In re Bundy's Estate,* 44 Cal. App. 466 (186 Pac. 811); *Ex parte Dagley,* 35 Okla. 180 (128 Pac. 699, 44 L. R. A. [N. S.] 389); *In re Idleman's Commitment,* 146 Ore. 13 (27 Pac. [2d] 305); *Groves* v. *Ware,* 182 N. C. 553 (109 S. E. 568); *Ex parte Scudamore,* 55 Fla. 211 (46 South. 279); *Sharum* v. *Meriwether,* 156 Ark. 331 (246 S. W. 501); *Hagany* v. *Cohnen,* 29 Ohio St. 82. It is true that 1 Blume's "Transactions of the Supreme Court of Michigan, 1805–1814," p. 106, an inquiry into the

sanity of a person was made by a jury. However, there is no authority to the effect that that was the only permissible procedure. 1 Michigan Territorial Laws, p. 376, provided for an inquest to determine sanity by the county commissioners or any other three "discreet persons." As no jury was necessary prior to the adoption of the Constitution, none. is required under article 2, § 13, of the present Constitution. Since a jury trial is not required by the Constitution, such jury as is provided the·prisoner under the act in question need not possess the essential incidents of a common-law jury. *Ex parte Shackleford,* 188 Cal. 279 (204 Pac. 822); *Groves* v. *Ware, supra.* The commitment of a sex degenerate is similar to the commitment of an insane person; similar principles apply, and the fact that the inquest under section 1b of the act is made by a jury not of the vicinage violates no constitutional principles.

The statute applies only to sex degenerates who are not insane, and who have been previously convicted of a sex offense. The confinement of the application of the statute to sane persons is a reasonable classification and not a denial of equal protection under the law, since insane sex degenerates may be committed under 2 Comp. Laws 1929, § 6878 *et seq.* (Stat. Ann. § 14.801 *et seq.*). Nor does the fact that the act applies only to persons previously convicted of a sex offense create an unreasonable classification. The prior commission of a sex crime is a fair preliminary test of whether or not a person sexually abnormal is dangerous to the public safety.

To commit a prisoner under the statute, it must be proved that he is a "sex degenerate, or a sex pervert, or is suffering from a mental disorder characterized by marked sex deviation, and possessed of tendencies dangerous to public safety." The diffi-

culty of defining specifically sex degeneracy, or a "marked sex deviation," in no way makes the law unconstitutional. The determination is made upon the testimony of doctors and others in the same manner as in insanity proceedings. The statute is sufficiently definite to satisfy due process and prohibits an arbitrary finding by those whose duty it is to make the inquiry and determination.

While the act is not as specific as it might be as of the right of the prisoner to notice and a hearing, the prisoner in the instant case was given full notice and an opportunity to be heard. Although a statute may not expressly provide for notice, it will not be held unconstitutional if the giving of such notice may be fairly implied. *Smith* v. *State Board of Medical Examiners,* 140 Iowa, 66 (117 N. W. 1116). The provisions of the statute requiring that the court conduct an examination of the prisoner and that a jury hearing may be had unless waived implies that notice thereof shall be given to the prisoner. The very right to a hearing carries with it the accompanying right to notice thereof, and the right to present evidence. *Dick* v. *Supreme Body of the International Congress,* 138 Mich. 372; *Hansen* v. *Railroad Co.,* 32 Wyo. 337 (232 Pac. 1101); *State, ex rel. Hughes,* v. *Milhollan,* 50 N. D. 184 (195 N. W. 292); *Denver* v. *State Investment Co.,* 49 Col. 249 (112 Pac. 789, 33 L. R. A. [N. S.] 395). In several cases, although the statute considered failed to provide expressly for notice, such was implied from the right to a hearing. *Ex parte Scudamore, supra; Ex parte Allen,* 82 Vt. 365 (73 Atl. 1078, 26 L. R. A. [N. S.] 232); *Georgia Railroad Bank & Trust Co.* v. *Liberty National Bank & Trust Co.,* 180 Ga. 4 (177 S. E. 803); *Yeomans* v. *Williams,* 117 Ga. 800 (45 S. E. 73); *Matter of Blewitt,* 131 N. Y. 541 (30 N. E. 587). The statute must,

therefore, be construed to provide for the constitutional requirements of notice and a right to be heard, to be represented by counsel, and to present evidence. Had the prisoner not received such notice, he could successfully raise the question of lack of compliance with the statute.

I must conclude that section 1b of Act No. 196, Pub. Acts 1937, violates no constitutional limitations and that it was error for the lower court to dismiss the petition.

The order of dismissal should be reversed, without costs, a public question being involved, and the lower court should be ordered to proceed with the hearing.

BUSHNELL and McALLISTER, JJ., concurred with BUTZEL, J.