*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LONNIE JAMES ARNOLD,

Defendant-Appellant.

FOR PUBLICATION
June 11, 2019
9:05 a.m.

No. 325407
Monroe Circuit Court
LC No. 13-040406-FH

## ON REMAND

Before: GLEICHER, P.J., and MURRAY, C.J. and CAVANAGH, J.

PER CURIAM.

Violation of the statute proscribing indecent exposure by a sexually delinquent person, MCL 750.335a(2)(c) "is punishable by imprisonment for an indeterminate term, the minimum of which is 1 day and the maximum of which is life." Before the enactment of the legislative sentencing guidelines, the "1 day to life" sentence was construed as an alternate or optional sentence for sexually delinquent persons. See *People v Kelly*, 186 Mich App 524; 465 NW2d 569 (1990). With the 1998 enactment of the legislative sentencing guidelines, indecent exposure by a sexually delinquent person was classified as a Class A offense felony, subject to a range of sentences dependent on an offender's variable scores. MCL 777.16q. The Supreme Court has directed us to consider what effect, if any, the adoption of the guidelines "had on a trial court's options in sentencing a defendant convicted of indecent exposure by a sexually delinquent person." *People v Arnold*, 502 Mich 438, 483; 918 NW2d 164 (2018) (*Arnold III*).

We conclude that the sentencing guidelines provide another option or alternative, in addition to the sexual delinquency scheme, when sentencing an individual convicted of indecent exposure. As the trial court was not aware of its range of sentencing options, or that the legislative sentencing guidelines would be rendered advisory by *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), we vacate defendant's sentence and remand to the trial court for further sentencing proceedings.

# I

A jury convicted defendant of indecent exposure by a sexually delinquent person in violation of MCL 750.335a(2)(c)[1] for fondling himself at a public library in front of an employee. Defendant was characterized as a sexually delinquent person because he had committed such acts before and therefore was a "person whose sexual behavior is characterized by repetitive or compulsive acts which indicate a disregard of consequences or the recognized rights of others." MCL 750.10a.[2] Indecent exposure by a sexually delinquent person is a Class A felony under MCL 777.16q, with a statutory maximum of life. Defendant's offense and prior record variable scores placed him in cell F-III of the Class A grid, MCL 777.62, and with consideration of defendant's fourth habitual offender status, MCL 777.21(3)(c), defendant's minimum guidelines range was calculated at 135 to 450 months. *Arnold III*, 502 Mich at 449-450. The trial court sentenced defendant within the guidelines to 25 to 70 years' imprisonment. *People v Arnold*, unpublished opinion of the Court of Appeals, issued April 12, 2016 (Docket No. 325407), slip op at 1 (*Arnold I*).[3]

In *Arnold I*, defendant challenged his sentence, asserting that the trial court was required by MCL 750.335a(2)(c) to sentence him to "1 day to life". *Arnold I*, slip op at 4. We concluded that a court sentencing a defendant convicted under MCL 750.335a(2)(c) must still "abide by the sentencing guidelines" as directed by *People v Buehler (On Remand)*, 271 Mich App 653, 658-659; 723 NW2d 578 (2006), rev'd in part on other grounds 477 Mich 18 (2007). *Arnold I*, slip op at 5. However, we remanded for further sentencing proceedings as *Lockridge*, 498 Mich 358, had since rendered the sentencing guidelines advisory. *Arnold I*, slip op at 5-6.

Defendant sought reconsideration, again urging that a sentence of "1 day to life" was required. We granted the motion because in the interim this Court issued a published opinion controlling our resolution of this issue—*People v Campbell*, 316 Mich App 279; 894 NW2d 72 (2016). *Campbell*, 316 Mich App at 299-300, held that although the legislative sentencing guidelines were now only advisory, "the sentence provided under MCL 750.335a(2)(c) is stated in mandatory terms. Consequently, after the decision in *Lockridge*, trial courts must sentence a defendant convicted of indecent exposure as a sexually delinquent person consistently with the requirements of MCL 750.335a(2)(c)." In *People v Arnold*, unpublished opinion of the Court of Appeals, issued September 22, 2016 (Docket No. 325407), slip op at 2 (*Arnold II*), we concluded

---

[1] MCL 750.335a was amended after defendant's trial. See 2014 PA 198. However, the relevant sections of MCL 750.335a(1) and (2) have not been altered in any substantive way.

[2] "MCL 750.10a is a definitional statute, and does not carry the possibility of a separate conviction or sentence independent of other charges in the Criminal Code." *People v Craig*, 488 Mich 861; 788 NW2d 13 (2010).

[3] In *Arnold I*, slip op at 4, we vacated defendant's conviction and sentence for aggravated indecent exposure, MCL 750.335a(2)(b), as violative of double jeopardy. That ruling has not been challenged.

that we were "bound by *Campbell*" to "remand for imposition of the mandatory sentence set forth in MCL 750.335a(2)(c)."

The Supreme Court granted the prosecutor's application for leave to appeal this Court's decision in *Arnold II*, "set aside *Campbell*,"[4] and vacated our opinion based upon it. *Arnold III*, 502 Mich at 483. The Supreme Court determined that a " '1 day to life' sentence has never been required by [MCL 750.335a(2)(c)]," contrary to *Campbell*, 316 Mich App at 279. *Arnold III*, 502 Mich at 444. Rather, "1 day to life" is a nonmodifiable sentencing option for sexual delinquents. *Id*. at 450-451, citing *Kelly*, 186 Mich App at 531.

The Court outlined the development of the sexual delinquency sentencing scheme. *Arnold III*, 502 Mich at 447-465. The Court described how the first sexual delinquency acts provided for the indefinite commitment of "sexual psychopaths" until a court determined that they were no longer "a menace to the public safety." *Id*. at 457 (cleaned up).[5] Over time, "the Legislature began chipping away at" the broad application of the sexual delinquency sentencing scheme. *Id*. at 464. It is now limited in application to five specific offenses: "(1) sodomy, MCL 750.158, (2) indecent exposure, and (3) gross indecency between (a) two males, MCL 750.338, (b) two females, MCL 750.338a, or (c) between a male and a female, MCL 750.338b." *Arnold III*, 502 Mich at 464-465. The Court further noted that prior to the enactment of 2005 PA 300, MCL 750.335a provided that violation of the statute " '*may be* punishable by imprisonment . . . for an indeterminate term, the minimum of which *shall be* 1 day and the maximum of which *shall be* life.' " The 2005 amendments substituted "is" for the emphasized terms. *Arnold III*, 502 Mich at 451-452.

The Court concluded that the "1 day to life" sentence comprises an "alternate sentence" in accordance with MCL 767.61a, and that this alternative sentence is optional, not mandatory. *Id*. at 465-469. MCL 767.61a outlines the manner in which an individual charged of an identified predicate offense may commensurately be identified as a sexually delinquent person:

> In any prosecution for an offense committed by a sexually delinquent person for which may be imposed an *alternate* sentence to imprisonment for an indeterminate term, the minimum of which is 1 day and the maximum of which is life, the indictment shall charge the offense and may also charge that the defendant was, at the time said offense was committed, a sexually delinquent person. . . . Upon a verdict of guilty to the first charge or to both charges or upon a plea of guilty to the first charge or to both charges *the court may impose any punishment provided by law for such offense.* [MCL 767.61a (emphasis added).]

---

[4] We note that neither party sought leave to appeal in *Campbell*.

[5] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

Under this statute, before the enactment of the statutory sentencing guidelines, "a judge faced with an adjudicated sexual delinquent guilty of indecent exposure could choose any legally available sentencing option that the judge deemed appropriate," including a fine and jail sentence of up to 1 year or alternatively "1 day to life" as provided in MCL 750.335a(2)(a)-(c). *Arnold III*, 502 Mich at 468-469. The Supreme Court "conclude[d] that [*Kelly*, 186 Mich App 524,] correctly construed the '1 day to life' alternate sentence as an option a sentencing judge could draw upon, alongside and not to the exclusion of other available options," based on "the text of [MCL 750.335a(2)], the Legislature's usual pattern in clearly identifying mandatory sentences, the relation this scheme would have had to the overarching law of sentencing at the time the scheme was adopted, and the history of the scheme." *Arnold III*, 502 Mich at 469.

"Having concluded that *Kelly* correctly construed '1 day to life' as an option," the Supreme Court then considered whether the option of "1 day to life" was modifiable—permitting a sentence within the range identified—or nonmodifiable—requiring the precise sentence of "1 day to life." *Id*. The Court found the "1 day to life" sentence nonmodifiable based on the Legislature's use of the mandatory term "shall." The Court also found the characterization of "1 day to life" as an "alternate sentence" in MCL 767.61a to "indicate[] that [the sentence] ought to function in some distinct way." *Arnold III*, 502 Mich at 470. The Court further relied on the historical purpose of the "sexual-delinquency scheme, which was clearly intended to be therapeutic and open-ended." *Id*. at 471. The Court emphasized, "The purpose of the scheme was to create a *different* sentencing option, one in which the judge *gave up* control over the amount of time the defendant served to experts who would assess when the defendant was well enough to rejoin society." *Id*.

And viewing the "1 day to life" sentencing scheme in conjunction with MCL 769.9(2), the Supreme Court "agree[d] with *Kelly* that the '1 day to life' sentencing scheme is an exception to the indeterminate sentencing statute's ban on so-called 'life tails.' "[6] *Arnold III*, 502 Mich at 472. Specifically, the Court explained:

> MCL 769.9(2) applies only to "cases where the maximum sentence in the discretion of the court may be imprisonment for life or any number or term of years." The phrasing "life or any term of years" is used verbatim in a variety of statutes. When MCL 750.335a was adopted, it spoke of "imprisonment in the

---

[6] MCL 769.9(2) bans "life tails" as follows:

> In all cases where the maximum sentence in the discretion of the court may be imprisonment for life or any number or term of years, the court may impose a sentence for life or may impose a sentence for any term of years. If the sentence imposed by the court is for any term of years, the court shall fix both the minimum and the maximum of that sentence in terms of years or fraction thereof, and sentences so imposed shall be considered indeterminate sentences. The court shall not impose a sentence in which the maximum penalty is life imprisonment with a minimum for a term of years included in the same sentence.

state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life," 1952 PA 73, and MCL 767.61a speaks of "an indeterminate term, the minimum of which is 1 day and the maximum of which is life." On its own, this difference in wording may be enough to remove sexual-delinquency cases from MCL 769.9(2). Moreover, we agree with *Kelly* that because MCL 769.9(2) is a general indeterminate sentencing statute, while the sexual-delinquency scheme is a specific, integrated scheme, the more specific statute controls. [*Arnold III*, 502 Mich at 472 (cleaned up).]

The Court concluded:

[W]e construe the "1 day to life" sentence that the Legislature adopted in 1952 as being an alternative sentencing option that existed *alongside* other options, such as a life sentence or a term of years. Much as the sentence concepts "life" and "any term of years" are mutually exclusive and a sentencing judge may (in the appropriate case) opt for either but not both, so "1 day to life" was a mutually exclusive concept that a sentencing judge was free to opt for to the exclusion of a life- or term-of-years sentence. [*Id*. at 472-473 (cleaned up).]

Based on this ruling, the Court overruled or abrogated various cases to the extent they treated the "1 day to life" provision as an exclusive sentence. See *People v Butler*, 465 Mich 940, 941; 639 NW2d 256 (2001); *People v Murphy*, 203 Mich App 738; 513 NW2d 451 (1994). See also *People v Buehler*, 477 Mich 18; 727 NW2d 127 (2007); *Buehler (On Remand)*, 271 Mich App 653; *People v Buehler*, 268 Mich App 475; 710 NW2d 55 (2005). The Court also determined that the reasoning in *Campbell* "cannot stand," and must be "set aside" as it did not accord with the plain language of MCL 750.335a(2)(c) or its legislative history. *Arnold III*, 502 Mich at 479-481, 483.

In relation to the legislative sentencing guidelines, the Court reasoned:

[W]e do not believe that *Lockridge* has the significance ascribed to it by the Court of Appeals in *Campbell*. *Lockridge* concluded that the scoring process for the legislative sentencing guidelines violated the Sixth Amendment and, as a remedy for that constitutional violation, directed that henceforth the guidelines would be only advisory. Neither identifying that problem nor crafting that remedy illuminates whether the adoption of the sentencing guidelines and the classification of indecent exposure by a sexually delinquent person as a Class A felony could make legal a sentence that would not have been legal before the sentencing guidelines were adopted. Whether the sentencing guidelines are mandatory or merely advisory is neither here nor there; the question is what effect the legislative act of adopting the guidelines had on the sexual-delinquency scheme. [*Id*. at 480-481.]

And in relation to the *Buehler* line of cases, the Court continued:

[W]e no longer believe *Buehler III*[, 477 Mich 18,] fully understood the nature of the sexual-delinquency scheme. Its embrace of a vision of dueling

mandates between MCL 750.335a and the sentencing guidelines misconstrued the nature of the "1 day to life" sentencing option provided by MCL 750.335a and MCL 767.61a. It appears that the Court of Appeals in the instant case relied on the series of *Buehler* decisions, in particular their caveat that the 2005 PA 300 amendment of MCL 750.335a may have been meaningful, in reaching its decision. By contrast, we have now concluded that the 2005 PA 300 amendment made no meaningful textual adjustment to the statute. [*Arnold III*, 502 Mich at 479-481.]

Ultimately, the Supreme Court concluded:

*Kelly* correctly construed the sexual-delinquency "1 day to life" scheme, as an option a trial court could use its discretion to consider imposing alongside the other statutory penalties available under the statute (at that time, up to 1 year in jail, which was expanded by 2005 PA 300 to be as much as 2 years in prison for aggravated indecent exposure). We hold that the switch in 2005 PA 300 from "may be punishable" to "is punishable," and "the minimum of which shall be 1 day" to "the minimum of which is 1 day," and "the maximum of which shall be life" to "the maximum of which is life," is merely stylistic. We conclude that *Lockridge*'s constitutional remedy is not pertinent to the outcome of this case. And we disavow *Buehler* as having been premised on a misconception of the law of sexual delinquency. [*Arnold III*, 502 Mich at 482-483.]

Our directive, "in light of these rulings," is to determine "what effect the adoption of the legislative sentencing guidelines in 1998—and in particular, their classification of the instant offense as a Class A felony—had on a trial court's options in sentencing a defendant convicted of indecent exposure by a sexually delinquent person." *Id*.

II

Resolution of this issue requires us to reconcile the optional, alternative sentence of "1 day to life" provided in MCL 750.335a(2) and other statutes with sexual delinquency provisions in the Penal Code with the classification of indecent exposure (and other designated offenses) by a sexually delinquent person as a Class A felony subject to the sentencing guidelines as provided in MCL 777.16q of the Code of Criminal Procedure.

Although *Kelly* was issued before the enactment of the legislative sentencing guidelines, our Supreme Court reaffirmed its interpretation of MCL 750.335a in *Arnold III*. In *Kelly*, this Court explained:

Sexual delinquency is not merely a penalty enhancement provision related to the principal charge; it is an alternate sentencing provision tied to a larger statutory scheme.

We conclude that the alternate sentence is an indeterminate term of one day to life imprisonment. In interpreting a statute, we apply the rule of ordinary usage and common sense. Applying such a rule, the word "shall" generally

-6-

denotes a mandatory duty. Because the statute at issue provides that the minimum of the indeterminate term shall be one day and the maximum shall be life, we conclude that that is the prescribed length of the indeterminate term. [*Kelly*, 186 Mich App at 528-529 (cleaned up).]

In addition, this Court found that the "indeterminate sentence of one day to life" was not invalid under the "indeterminate sentence act, specifically MCL 769.9(2)[.]" *Kelly*, 186 Mich App at 529. The Court distinguished between MCL 769.9, which was applicable "only to cases in which the maximum sentence authorized by statute is life imprisonment or any term of years," from MCL 750.338a wherein "the only maximum sentence authorized is life imprisonment. Moreover, the minimum sentence has been set by statute: one day." *Kelly*, 186 Mich App at 530. This Court construed "the sexually delinquent sentencing scheme as a specific scheme which controls over the general indeterminate sentence act. Sexual delinquency is limited to select criminal provisions and thus is a seldom-used category of alternate sentencing." *Id.* at 531 (cleaned up). This Court continued, "The sexual delinquency legislation was enacted to provide an alternate sentence for certain specific sexual offenses when evidence appeared to justify a more flexible form of confinement." *Id.* Thus, "the sexually delinquent sentencing scheme" was determined to function "as an exception to the indeterminate sentence provision . . . ." *Id.*

In 1998, the Legislature enacted the statutory sentencing guidelines, which were intended to apply to specified enumerated felonies committed on or after January 1, 1999. MCL 777.1 *et seq.*; MCL 769.34(2). "The evident purposes" of the enactment of the "comprehensive sentencing reform" "included reduction of sentencing disparity, elimination of certain inappropriate sentencing considerations, acceptance of [our Supreme] Court's [*People v Tanner*, 387 Mich 683, 690; 199 NW2d 202 (1972)] rule, encouragement of the use of sanctions other than incarceration in the state prison system, and resolution of a potential conflict in the law." *People v Garza*, 469 Mich 431, 434-435; 670 NW2d 662 (2003). In enacting the legislative sentencing guidelines, it is presumed that the Legislature was aware of the existence of the sexual delinquency sentencing scheme. *People v Rahilly*, 247 Mich App 108, 112; 635 NW2d 227 (2001) ("The Legislature is presumed to be aware of and legislate in harmony with existing laws when enacting new laws."). In particular, the tie-barring of the amendments to MCL 750.338a and MCL 777.16q reinforces that the inclusion and identification of offenses involving sexually delinquent persons as enumerated felonies under the sentencing guidelines was purposeful and intentional.

Two statutes that relate to the same subject or share a common purpose are in pari materia and must be read together. The goal of the in pari materia rule is to give effect to the legislative purpose found in the harmonious statutes. When two statutes lend themselves to a construction that avoids conflict, that construction should control. [*Rahilly*, 247 Mich App at 112-113 (cleaned up).]

Specifically:

The object of the in pari materia rule is to further legislative intent by finding an harmonious construction of related statutes, so that the statutes work together compatibly to realize that legislative purpose. Therefore, if two statutes lend themselves to a construction that avoids conflict, that construction should

-7-

control. Two statutes that form a part of one regulatory scheme should be read in pari materia. [*People v Butler*, 315 Mich App 546, 550; 892 NW2d 6 (2016) (cleaned up).]

Further, our Supreme Court "has previously recognized that although the Penal Code and the Code of Criminal Procedure 'were separately enacted and have distinct purposes,' the two codes 'relate generally to the same thing and must therefore be read *in pari materia*. . . .' " *People v Washington*, 501 Mich 342, 354 n 29; 916 NW2d 477 (2018), quoting *People v Smith*, 423 Mich 427, 442; 378 NW2d 384 (1985) (opinion by WILLIAMS, C.J.).

In *Smith*, 423 Mich 427, our Supreme Court offered insight in how to reconcile discrepancies between the Penal Code and the Code of Criminal Procedure, there provisions regarding the definition and distinctions between a misdemeanor and felony. The Court prefaced its analysis by stating, "Statutes which relate to the same persons or things, or which have a common purpose, are to be read *in pari materia*, and a strict construction will not be given to one statute where doing so would defeat the main purpose of another on the same subject." *Id*. at 441-442. More specifically, the Court recognized, citing the preambles to the relevant codes:

> While the Penal Code and the Code of Criminal Procedure relate generally to the same thing and must therefore be read *in pari materia*, the two codes were separately enacted and have distinct purposes. As concerns this case, the purpose of the Penal Code is to define crimes and prescribe the penalties therefor. The purpose of the Code of Criminal Procedure is to codify the laws relating to criminal procedure.
>
> Included in the Code of Criminal Procedure are provisions for the proper procedures to be followed, for example: upon arrest, at the preliminary examination, at trial, and at judgment and sentencing. The Legislature expressly provided that the Code of Criminal Procedure be deemed "remedial" and be "liberally construed to effectuate the intents and purposes" of the act. MCL 760.2. [*Smith*, 423 Mich at 442 (cleaned up).]

In resolving the distinctions between the definitions in the Penal Code and the Code of Criminal Procedure, the Court opined, "It is obvious that the Penal Code definitions apply only to the Penal Code. Similarly, the definitions of the Code of Criminal Procedure are limited in application to that code." *Id*. at 444.

Significantly, the *Smith* Court stated, "We have previously held that the grade given an offense in the Penal Code is not the controlling consideration in determining the procedural rights afforded an accused outside the Penal Code." *Id*. The Court further explained with regard to the distinction between the definitions of a misdemeanor and a felony in the Penal Code and the Code of Criminal Procedure:

> The label placed upon an offense in the Penal Code is just as irrelevant in determining statutorily mandated post-conviction procedures in the Code of Criminal Procedure as it is in determining constitutionally mandated post-conviction procedures. The three post-conviction statutes at issue here, the

> habitual-offender statute, the probation statute, and the consecutive sentencing statute, all have the same general purpose: to enhance the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts. In order to achieve the Legislature's intended purpose in the Code of Criminal Procedure, we find that the Legislature meant exactly what it said: Offenses punishable by more than one year of imprisonment are "felonies" for purposes of the habitual-offender, probation, and consecutive sentencing statutes. Because misdemeanors punishable by two years of imprisonment fall within the "felony" definition, they may be considered felonies for purposes of these statutes. [*Id*. at 445.]

The Court denied that this analysis or reading of the statutory provisions rendered language either superfluous or redundant, indicating "that the definitions in each code have full meaning for all the purposes of *that* code, but are not simply transferable to the other code." *Id*. at 446 n 2. This analysis is equally applicable to the discrepancy or disconnect in sentencing options between MCL 750.335a of the Penal Code and MCL 777.16q of the Code of Criminal Procedure.

Defendant suggests that sexual delinquency is not an offense, but rather an alternative sentencing scheme that only attaches to specified predicate felony offenses. As such, sexual delinquency is not a felony enumerated in the Penal Code for purposes of MCL 777.16q and falls outside the guidelines. This is either an oversimplification or mischaracterization of the law. Defendant was sentenced for indecent exposure and also was identified as a sexual delinquent. The enumerated predicate felony, which is included in the Penal Code, MCL 750.335a, and the Code of Criminal Procedure, MCL 777.16q, is indecent exposure, with the sexual delinquency component being construed "as a separate, alternate form of sentencing." *Arnold III*, 502 Mich at 471 (cleaned up). The difficulty is in reconciling the sentencing options available rather than disputing that the predicate felonies are included in both the Penal Code and Code of Criminal Procedure. That sexual delinquency does not comprise a separate or stand-alone offense in the Code of Criminal Procedure does not resolve the issue presented.

Given the context, as discussed above, our Supreme Court's holdings in *Arnold III* serve to define the sentencing parameters for individuals convicted of indecent exposure as a sexually delinquent person. In *Arnold III*, 502 Mich at 444-477, the Court expended considerable time and effort tracing the history of sexual delinquency. Focus was placed on the efforts of the Legislature to "create a different sentencing option" for individuals identified as sexually delinquent to provide "therapeutic and open-ended" alternatives for those offenders viewed as having "a form of mental illness" requiring "treatment." *Id*. at 471. Premised on our Supreme Court's discussion and findings, the "1 day to life" sentence is "an alternative sentencing option," which "existed *alongside* other options, such as a life sentence or a term of years." As explained, the " '1 day to life' sentence was a mutually exclusive concept that a sentencing judge was free to opt for to the exclusion of a life- or term-of-years sentence." *Id*. at 472-473.

The Court's favorable adoption of *Kelly* emphasizes that the sentence of "1 day to life" comprises "a nonmandatory option that a trial court could draw upon should it choose to exercise its discretion to do so." *Id*. at 473. Specifically, in finding that "*Kelly* was rightly decided," the Court emphasized "that MCL 750.335a did not *prescribe* anything; instead, it only made an

*option* available." *Arnold III*, 502 Mich at 477. This comports with the Court's earlier decision in *Smith*, 423 Mich at 445, recognizing the distinctions between the Penal Code and Code of Criminal Procedure while simultaneously acknowledging the purpose of the Code of Criminal Procedure "to enhance the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts." As is the circumstance here, where defendant is a fourth habitual offender, the sentencing guidelines provide yet another sentencing alternative for individuals convicted of indecent exposure as a sexual delinquent. Between the Penal Code and the Code of Criminal Procedure, the judge in this case would be afforded options in sentencing, premised on the severity of the behavior and the particular characteristics of the offender, encompassing: (a) 1 day to life for indecent exposure by a sexually delinquent person, MCL 750.335a(2)(c), or (b) a sentence premised on a scoring of the guidelines, MCL 777.16q, which in this case could be enhanced under the habitual offender statute, MCL 777.21. This conforms with the reasoning of the Court in *Arnold III*, 502 Mich at 479-480, after discussing the wording of MCL 750.335a(2)(c) and recognizing:

> MCL 750.335a(2)(c) still says only that the offense is *punishable* by a "1 day to life" sentence, and "punishable" expresses only the possibility of punishment, not its necessity. Moreover, MCL 767.61a has not been amended, meaning that it still characterizes "1 day to life" as an "alternate" sentence, not a mandatory sentence. Indeed, MCL 767.61a has always phrased the indeterminate sentence option in the same fashion as the postamendment version of MCL 750.335a: "the minimum of which *is* 1 day and the maximum of which *is* life." And MCL 767.61a lays out a procedure common to all five sexual-delinquency crimes, yet each of the other four still uses the former "may be punishable" and "shall be 1 day . . . shall be life" wording. The sexual delinquency alternative sentence is obviously intended to work the same for all five offenses, so if it is optional for the others, it must still be optional for indecent exposure. All signs point to the 2005 amendment adding only the aggravated indecent-exposure offense [to MCL 750.335a] and making no substantive changes to the "1 day to life" alternative sentence.

The most rational construction is that the Penal Code provides judges with certain options, not mandates, when confronted with an individual convicted of indecent exposure as a sexual delinquent. Trial courts may consider sentencing options consistent with the guidelines, particularly when the trial court determines that factors governed by the Code of Criminal Procedure, such as an offender's status as a habitual offender, supply an appropriate mechanism "to enhance the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts." *Smith*, 423 Mich at 445. This approach harmonizes the history of sexual delinquency sentencing with the more recent recognition that when sentences are imposed they should be "proportional to the seriousness of the circumstances surrounding the offense and the offender," and that "the proper approach to sentencing is to favor individualized sentencing for every defendant." *People v Sabin*, 242 Mich App 656, 661; 620 NW2d 19 (2000). As recently discussed in *People v Odom*, ___ Mich App ___; ___ NW2d ___ (2019) (Docket No. 339027); slip op at 8-9:

> The purpose of the proportionality requirement is to combat unjustified disparity in sentencing, thereby ensuring that similar offense and offender characteristics

-10-

receive substantially similar sentences. Under our system of sentencing, this principle of proportionality is first entrusted to the Legislature, which is tasked with grading the seriousness and harmfulness of a given crime and given offender within the legislatively authorized range of punishments. [Cleaned up.]

"Although the Legislature's guidelines are advisory, they remain a highly relevant consideration in a trial court's exercise of its sentencing discretion." *Id*. at 9.

Ultimately, the relevant statutory provisions in the Penal Code and the Code of Criminal Conduct—MCL 750.335a and MCL 777.16q—must be read *in pari materia*. *Kelly*, *Smith*, and the language of the relevant statutes counsel that a trial court has the option to sentence a defendant to "1 day to life" under MCL 750.335a(2)(c), or to a term consistent with the advisory sentencing guidelines.

III

Defendant urges that the "rule of lenity" requires us to declare the legislative sentencing guidelines inapplicable. "The 'rule of lenity' provides that courts should mitigate punishment when the punishment in a criminal statute is unclear." *People v Johnson*, 302 Mich App 450, 462; 838 NW2d 889 (2013) (cleaned up). The rule, however, "applies only in the circumstances of an ambiguity, or in the absence of any firm indication of legislative intent." *People v Wakeford*, 418 Mich 95, 113-114, 341 NW2d 68 (1983). "A provision is not ambiguous just because reasonable minds can differ regarding the meaning of the provision. Rather, a provision of the law is ambiguous only if it "irreconcilably conflict[s]" with another provision, or when it is equally susceptible to more than a single meaning." *People v Gardner*, 482 Mich 41, 50 n 12; 753 NW2d 78 (2008) (cleaned up).

As noted, the Legislature clearly intended to include indecent exposure by a sexually delinquent person as offenses within both the Penal Code and the Code of Criminal Procedure. The intent of the Legislature to provide alternative sentencing options for individuals convicted of this offense obviates the existence of any ambiguity, rendering the rule of lenity inapplicable. See *People v Perry*, 317 Mich App 589, 605-606; 895 NW2d 216 (2016) ("Given the clear indication of legislative intent and the absence of ambiguity, the rule of lenity does not apply.").

IV

Defendant further contends, "If this Court finds that MCL 750.335a(2)(c) is an enumerated felony subject to sentencing under the guidelines by its inclusion in MCL 777.16q, then the sentencing guidelines act [w]as a revision, amendment, or repeal of the inconsistent 1 day to life sentencing provision" and "is unconstitutional." "No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length." Const 1963, art 4, § 25. Our Supreme Court has explained:

[Section] 25 is worded to prevent the revising, altering or amending of an act by merely referring to the title of the act and printing the amendatory language then under consideration. If such a revision, alteration or amendment were allowed,

the public and the Legislature would not be given notice and would not be able to observe readily the extent and effect of such revision, alteration or amendment. [*Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 470; 208 NW2d 469 (1973).]

"[I]f an act is complete within itself, it does not fall within the constitutional prohibition." *People v Meeks,* 92 Mich App 433, 444; 285 NW2d 318 (1979). Specifically, § "25 is directed at preventing undesirable conduct with respect to amendment of a particular act. It does not seek to correct tangential effects which the amendment, revision or alteration may have on those statutes not directly affected." *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich at 475. "[A]mendment by implication is not the evil sought to be avoided by [Const 1963, art 4, § 25]." *People v Hughes*, 85 Mich App 674, 681; 272 NW2d 567 (1978).

The legislative sentencing guidelines do not amend or change the language of the Penal Code, specifically MCL 750.335a. The statutory provisions at issue, MCL 750.335a and MCL 777.16q, are independent and complete and do not necessitate reference to another statute to ascertain their meaning. Any inclusion by reference is not violative of Const 1963, art 4, § 25. Despite what might have comprised an illegal sentence for indecent exposure by a sexually delinquent person at the time of enactment of the legislative sentencing guidelines, the tie-barred amendments to MCL 777.16q and MCL 750.335a remedied any potential conflict.

V

Our Supreme Court also suggested that the holdings in *People v Frontczak*, 286 Mich 51; 281 NW 534 (1938), and *In re Boulanger*, 295 Mich 152; 294 NW 130 (1940), may be relevant in the resolution of this matter. *Arnold III*, 502 Mich at 482 n 20.

In *Frontczak*, 286 Mich at 53, the defendant was convicted of gross indecency and sentenced to 30 days to 5 years in prison. The Legislature subsequently enacted 1937 PA 196, which subjected a criminal defendant to hospitalization before initiation of his criminal sentence and allowed then-incarcerated defendants to be transferred to a hospital until the defendant's purported deviance was cured. *Frontczak*, 286 Mich at 55-58. The state commissioner of pardons and paroles then filed a petition in the local circuit court, invoking the new statutory provision and seeking to have the defendant committed to a state hospital. *Id*. at 53-54. Specifically, our Supreme Court determined that this procedure was unconstitutional under Const Art 2, § 19:

[B]y the 1937 act, if considered a part of criminal procedure, is void, as subjecting an accused to two trials and convictions in different courts for a single statutory crime, with valid sentence interrupted by supplementary proceeding in another court, with confinement in a non-penal institution and with possible resumption of imprisonment under the original sentence. If not for a single offense, then one trial is for a penalized overt act and the other for having a mental disorder, characterized by marked "sexual deviation." [*Frontczak*, 286 Mich at 58.]

"Hospitalization, with curative treatment and measures may be desirable but, until the law makes a sane person amenable to compulsory restraint as a sex deviator, it falls short of due process in merely providing procedure." *Id*. at 59.

In *Boulanger*, 259 Mich at 153, the defendant pleaded guilty to gross indecency, with his sentencing deferred pending appointment of a sanity commission, which ultimately did not find the defendant insane, but rather "psychopathic or a sex degenerate or sex pervert and dangerous to public safety." The defendant was sentenced to six months in jail to be followed by commitment to a state hospital "until this court shall adjudge you cease to be a menace to public safety." *Id*. at 154. The defendant filed a petition for habeas corpus based on his sentencing to dual punishments. *Id*. at 156. Our Supreme Court, relying in part on *Frontczak*, found no authority permitting the Court to commit the defendant to hospitalization arising from his criminal conviction. *Id*.

Neither *Frontczak* nor *Boulanger* is relevant to the issue presented in this remand. There is no request or attempt to impose dual punishments for defendant, or a punishment that is not authorized by law. Defendant received only one of the sentencing options provided by statute. When defendant committed his offense, MCL 750.335a and MCL 777.16q provided multiple, but exclusive, sentencing options. Unlike the defendants in *Frontczak* and *Boulanger*, the current defendant did not face a series of penalties for his single act.

We vacate defendant's sentence and remand for further sentencing proceedings. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Christopher M. Murray
/s/ Mark J. Cavanagh

-13-